**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ERNEST EDWARD GAINES,** ) | |
| **ID # 1364192** ) | |
|       Petitioner, ) | |
| vs. ) | No. 3:11-CV-0287-P (BH) |
| ) | |
| **RICK THALER, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
|       Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the petition should be denied with prejudice.

**I. BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is Rick Thaler, Director of TDCJ-CID.

**A. Factual and Procedural History**

On September 28, 2005, in Cause No. F05-56570-S, the State indicted petitioner for aggravated robbery on or about August 28, 2005, enhanced by a prior felony conviction. (Clerk's Record:2-3). Petitioner entered an open plea of guilty on April 18, 2006, and after a bench trial on the issue of punishment, he was sentenced to life imprisonment. (C.R.:5, 98).

On direct appeal, petitioner alleged that the trial court erred in refusing to appoint him a different attorney and in refusing to consider the full range of punishment in sentencing him. His conviction and sentence were affirmed on direct appeal. *Gaines v. State*, No. 05-06-00599-CR, 2007

WL 1829724, slip op. at 1-2 (Tex. App.–Dallas, June 27, 2007, pet. ref'd). His petition for discretionary review was denied on December 12, 2007. He filed a state habeas application on July 25, 2008. (State Habeas Transcript:2). On September 22, 2010, the Court of Criminal Appeals denied relief without written order on the findings of the trial court. (S.H.Tr.Supp.:cover).

Petitioner mailed his petition for federal habeas relief and a supporting memorandum on February 5, 2011. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9). Respondent filed a response on August 5, 2011, and provided the state court records. Petitioner filed his reply on October 31, 2011.

**B. Substantive Issues**

Petitioner raises five grounds for relief: 1) his trial counsel was ineffective by permitting a mental health expert who did not review his medical records to examine him for competency; 2) he was denied due process when he was found to be competent to stand trial by a mental health expert who did not review his medical records or know the medication he was taking; 3) during the state habeas process, he was never provided a copy of an affidavit his trial attorney submitted to the court, such that he was denied a "full and fair hearing"; 4) his guilty plea was involuntary because he was under suicide watch at the time the plea was made and before his new medication was properly evaluated; and 5) his due process rights were violated because no mental health expert was appointed to assist in his defense.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28

U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits[1] in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'un-

---

[1] "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ.

3

reasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. EXHAUSTION OF STATE REMEDIES

Respondent contends that petitioner failed to exhaust his first, third and fifth grounds for relief by not raising them in a state petition for discretionary review or a habeas application.

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). He must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. It is well-settled that federal courts can dismiss without prejudice a federal petition for writ of habeas corpus that contains unexhausted grounds for relief. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990). As a matter of comity, the state courts must be given a fair opportunity to hear and consider the claims raised by an applicant before those claims

are heard in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

"[N]otwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State", courts may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2); *see also Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"). In this case, the administration of justice would be better served by bypassing the procedural issue and reaching the merits of the claims.[2]

## IV.  COGNIZABILITY

In his third ground for relief, petitioner asserts that he was denied a "full and fair hearing" during the state habeas process because he was never provided a copy of an affidavit his trial attorney submitted to the court. This claim is not cognizable under 28 U.S.C. § 2254. Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Courts cannot grant habeas corpus relief to correct alleged errors in state habeas proceedings. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also  Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[E]rrors in state postconviction

---

[2] Respondent also asserts that these grounds are procedurally barred because petitioner could have, but failed, to raise them at the state level. As with exhaustion, justice is better served by also bypassing this procedural issue. *See Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation recognizing that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005)

proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court." ). Petitioner's challenge to the state post-conviction proceedings merely attack proceedings collateral to his detention and not his detention itself. Accordingly, this claim entitles him to no habeas relief.

## V.  VOLUNTARINESS OF GUILTY PLEA

Petitioner's fourth ground for relief alleges that his guilty plea was involuntary because he did not understand the nature or consequences of his plea. He essentially claims he was incompetent to plead guilty because he was on suicide watch, and his new medicine had not been evaluated by the trial court or the mental health expert before his guilty plea was accepted. (Pet. at 8). In his first ground, he claims that his trial attorney was ineffective because he permitted a mental health expert who did not review his medical records to examine him for competency. (Pet. at 7).

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). The Fourteenth Amendment Due Process Clause therefore imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978), *citing Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Before the trial court accepts a guilty plea, the court must ensure that a defendant fully understands the plea and its consequences. *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *citing Boykin*, 395 U.S. at 244. In addition, "the

voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A guilty plea is invalid if the defendant does not understand the nature of the constitutional right that he is waiving or if he has an incomplete understanding of the charges such that his plea cannot be considered an admission of guilt. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995), *citing Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

**A.     Competency**

Petitioner contends that his plea was involuntary because he was incompetent to plead guilty based on his placement on suicide watch and the medication he was taking at the time of his plea. (Pet. at 8). A criminal defendant must be mentally competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). He must have a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual

7

understanding of the proceedings against him.'" *Id.* at 396, 398-402 (finding applicable standard to be the same as for determining competence to stand trial set forth in *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

Here, the record reflects that after petitioner was indicted in September of 2005, and the trial court issued an order that he be examined regarding his mental health and competency to stand trial on November 3, 2005. (C.R.:7). Pursuant to this order, petitioner was examined by psychiatrist Michael Pittman on November 18, 2005; Pittman spoke to petitioner for an hour and reviewed his Dallas County Jail System records. Pittman submitted two reports to the trial court opining that petitioner did not have a mental illness and was competent to stand trial. His reports acknowledged that petitioner had received prior treatment in prison for depression and had been described a variety of medicines for unclear reasons, and that petitioner claimed to hallucinate. Pittman opined that petitioner was malingering to avoid criminal responsibility, and that while petitioner was probably intoxicated on cocaine at the time of the offense, he was not mentally ill or incompetent to stand trial. (C.R.:10-13). Pittman also gave his professional opinion that petitioner rationally understood the charges against him and the consequences of trial, was capable of discussing his actions and thoughts in the time period surrounding the alleged offense, and seemed able to make reasonable choices in matters concerning his legal situation. (C.R.:12).

On April 13, 2006, the trial court again ordered that petitioner be examined for his competency to stand trial and to determine whether he had a mental illness. (C.R.:92).[3] Psychiatrist Lisa Clayton submitted a report to the trial court based on an examination on April 18, 2006. In her

---

[3] This second examination apparently occurred because petitioner's attorney, who was appointed after the first examination, requested this exam and because petitioner had recently slit his wrists when he had been scheduled for a pretrial hearing. (R. 5:16-17; S.H.Tr.Supp.:260).

8

report, Dr. Clayton noted that petitioner told her that he had been diagnosed with mental problems while he was in prison previously, that MHMR told him that he had schizophrenia, and that he had cut his wrists a few days earlier while in jail because he was upset that he might have to go back to prison for a long time. (C.R.:106). She stated that, in her opinion, petitioner understood the charges against him, understood the adversarial nature of the legal proceedings, had the ability to disclose to his attorney relevant events and facts, had the ability to engage in reasonable choices of legal strategies and options, did not suffer from a severe mental illness, and met the legal criteria for mental competency. (C.R. 105-06).

Dr. Clayton also testified under oath in a pretrial hearing on April 18, 2006, regarding her examination of petitioner. She explained that in addition to speaking to petitioner, she examined his jail medical records and psychiatric records. She opined that petitioner was competent to stand trial and that he was scared and upset about his current charge and going to trial. Clayton also testified that petitioner had been prescribed an anti-depressant in the past while in prison, and that he had previously been diagnosed as having schizophrenia and bipolar disorder. However, she saw no evidence of either of these disorders. Petitioner had been prescribed a great deal of medication while in jail, including anti-depressants, a mood stabilizer, and an anti-psychotics, but at one point, his blood levels of some of the medicine did not indicate that he was taking the medicine as prescribed. Failure to take any of these drugs would not render petitioner incompetent to stand trial, however, because he did not have a mental illness. (R. 4:6-11). Later that same day, after a jury had been empaneled, petitioner signed a judicial confession, waived his right to a jury trial, and pled guilty. (R. 5:8-9, 15-17).

At the time petitioner pled guilty, the trial judge asked him whether he understood that he had the right to plead guilty, but that she would instruct the jury to find him guilty. Petitioner

9

answered that he understood.  He also stated that he understood that the punishment range would be fifteen years to life, that he was pleading guilty freely and voluntarily, that it was what he wanted to do, and that no-one had coerced him to enter a plea of guilty. (R. 5:8-10).  The trial judge also noted on the record that petitioner had been found competent to stand trial that morning and that she therefore believed that his plea had been entered freely and voluntarily.  (R. 5:16-17).  Petitioner's counsel also stated on the record his opinion that his client was competent to plead guilty. (R. 5:9).

At the state habeas level, petitioner's trial attorney submitted an affidavit stating that he consulted with petitioner about his competency and mental illness, that he never had any reservations about petitioner's competency to stand trial, but that out of an abundance of caution he requested that the trial court appoint Dr. Clayton to examine him for competence. (S.H.Tr.Supp.:260).[4]  Based on this affidavit and Dr. Clayton's examination, the trial court found that petitioner had failed to present proof that he was incompetent when he entered his guilty plea, and that his guilty plea was therefore voluntary. *Id*. at 257.  The Court of Criminal Appeals denied relief on the basis of these findings.

Petitioner has not shown that the state habeas court's denial of this claim is contrary to federal law or that the denial of relief was based on an unreasonable determination of the facts in light of the evidence presented at the state court level.  The records shows that mental experts were in agreement that petitioner was not suffering from a mental illness and that he was competent to stand trial.  The record reflects that Dr. Clayton knew about and testified to the court about the apparent suicide attempt and the prescribed medication, on the very date petitioner pled guilty, and

---

[4] The record reflects that prior to counsel being appointed on January 23, 2006, petitioner wrote a letter to the trial court stating that he wanted another lawyer assigned to him because his case should be tried in federal court as a car jacking, and his attorney refused to seek to have the indictment quashed or have venue changed. (C.R.:51). His previous attorney then sought to withdraw because he was unable to effectively communicate with petitioner. (C.R.47-50). This was the attorney representing petitioner when he was examined by Dr. Pittman in November of 2005.

10

stated that her medical opinion was that petitioner was competent to stand trial and did not suffer from a mental illness. Petitioner's trial counsel agreed with this determination that petitioner was competent to stand trial and to plead guilty

Furthermore, petitioner stated to the trial judge that he was pleading guilty voluntarily, and his signed judicial confession was admitted into evidence. (R. 5:9-10; R. 7:State's Ex. 1). The record reflects that petitioner understood the charges against him, understood the right to a trial that he was waiving, had the ability to consult with his lawyer with rational understanding, and had a rational and factual understanding of the proceedings against him. He has not overcome the presumption of regularity and "great weight" accorded state court records. *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are accorded "great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records are entitled to a "presumption of regularity"). Petitioner has failed to present clear and convincing evidence that this state habeas finding should not be presumed correct. He made a knowing and voluntary plea of guilty and is entitled to no habeas relief on this claim.

**B.      Ineffective Assistance of Counsel**

Petitioner also contends that his trial counsel was ineffective because he permitted a mental health expert to examine him for competency for trial who did not review his medical records.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render

11

a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[5] The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." Id.

With respect to guilty pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different

---

[5] *Daniels* is not cited for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context). *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

absent the alleged errors. *Id.* at 695-96.

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Counsel's affidavit at the state habeas level states that he consulted with petitioner on several occasions, and these discussions included the charges against petitioner, petitioner's rights and strategic options to him, and introducing petitioner to the defense investigator. Counsel also discussed with petitioner's mental illness. (S.H.Tr.Supp. 260-61). Counsel also submitted to the state court copies of two letters he sent petitioner on January 30, 2006, and April 4, 2006. The first letter advised petitioner of a plea bargain offer of a fifty-year sentence, his right to decline this offer, his right to a jury trial, his right to plead not guilty, and his option of pleading guilty and having

13

either the court or a jury sentence him, and also requested that petitioner forward his version of events. *Id*. at 265. The second letter reminded petitioner of his rights and that he had previously been advised that in counsel's opinion, the best strategy would be for petitioner to plead guilty and have a jury decide his punishment because petitioner had given a written statement to the police admitting his guilt, there were several witnesses to the crime, and there were serious injuries to the victim. This letter further explained that petitioner had initially agreed with this strategy but then decided he wanted a new attorney because counsel had allegedly not investigated the case. Petitioner had then requested to speak to the trial court, who denied his request for a new appointed attorney. *Id*. at 262-63.

The trial court made factual findings based on the affidavit and these letters that counsel investigated the case with the assistance of a licensed investigator; interviewed witnesses prior to trial; investigated petitioner's prior psychiatric history; and ensured that petitioner was competent to stand trial. The trial court then concluded that petitioner had failed to prove that counsel was ineffective. (S.H.Tr.Supp.:257). The Court of Criminal Appeals denied relief based on the findings of the trial court. This denial is not an unreasonable application of federal law.

The record shows that counsel met with petitioner several times, questioned him about the charged offenses, and advised him about a plea bargain. The record further reflects that counsel sought and obtained a competency exam of petitioner after he had already been examined and found competent to stand trial. Contrary to petitioner's assertions, both psychiatrists who examined him were aware of his mental health history and the medicine prescribed to him. While petitioner received a higher sentence from the trial court than that initially offered to him by the State, guilty pleas are not rendered involuntary because a defendant pleads guilty out of a desire to limit the possible penalty after being advised by competent counsel that a plea would be to his advantage.

14

*See North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  As noted, at the time petitioner pled guilty, he was advised by the trial court that the court could impose a maximum sentence of life imprisonment.  Therefore, petitioner has not shown that counsel did not provide the defendant with reasonably competent advice, and his guilty plea was not involuntary.

In sum, the totality of the circumstances shows that petitioner voluntarily and knowingly entered a plea of guilty, and his first and fourth grounds for relief should be denied.

## VII.  DUE PROCESS CLAIMS

In his second ground for relief, petitioner asserts that his due process rights were violated because psychiatrist Lisa Clayton never reviewed critical issues prior to rendering her opinion regarding his competency to stand trial.  In his fifth ground for relief, petitioner contends that his due process rights were violated because the court did not appoint a qualified mental health expert to assist in his defense. (Pet. at 7, 8a).

As noted, when a criminal defendant has pled guilty in open court, he may not raise alleged constitutional violations occurring prior to the entry of his guilty plea.  He instead may only attack the voluntariness of the plea.  *Tollett v. Henderson*, 411 U.S. at 267; *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988).  Petitioner's guilty plea was voluntary.  He therefore may not prevail on his due process claims based on actions that occurred before he entered his plea.  These claims are also contradicted by the record.  The two psychiatrists examined petitioner and reviewed the relevant documents before rendering their opinions regarding his competency to stand trial.  To the extent that petitioner complains that Dr. Clayton did not assist in his defense, including when he entered his plea, he appears to be complaining about her conclusion that he did not have a mental illness and was competent to stand trial.  Petitioner has pointed to no constitutional right violated when a mental health expert gives a professional opinion that does not benefit the defendant.  Petitioner's second

15

and fifth grounds are without merit.

## VIII.  EVIDENTIARY HEARING

Based on the filings in this case and the proceedings held in state court, as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 22nd day of December, 2011.**

```
_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
```

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

```
_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
```